**In re CELOTEX CO.**

No. 1080.

District Court, D. Delaware.

Feb. 18, 1936.

Samuel A. & Leonard B. Ettelson, of Chicago, Ill., Satterlee & Canfield, of New York City, and Hastings, Stockly & Duffy, of Wilmington, Del., for reorganization committee.

Cravath, deGersdorff, Swaine & Wood, of New York City, and Ward & Gray, of Wilmington, Del., for Central Securities Corporation, subscriber.

Blake & Voorhees, of New York City, for debenture holders' committee.

Fisher, Boyden, Bell, Boyd & Marshall, of Chicago, Ill., for bondholders' committee.

Cotton, Franklin, Wright & Gordon, of New York City, for stockholders' committee.

H. C. Lutkin and Hubert Van Hook (of Alden, Latham & Young), both of Chicago, Ill., Monroe & Lemann, of New Orleans, La., and Richards, Layton & Finger, of Wilmington, Del., for trustees.

Pam & Hurd, of Chicago, Ill., and William G. Mahaffy, of Wilmington, Del., for debtor.

Riegelman, Hess & Hirsch and Chamberlain, Clarke, Buchner & Willi, all of New York City, and Marvel, Morford, Ward & Logan, of Wilmington, Del., for objectors.

Robb, Clark & Bennitt, of New York City, for subscriber.

NIELDS, District Judge.

The Celotex Company has been under the control of this court for over three years. June 16, 1932, equity receivers were appointed. Ancillary receivers were appointed in Chicago and New Orleans. In 1933 the company faced liquidation. This was averted by the offer of one Groves to procure the necessary money for reorganization. For that purpose, he formed Central Securities Corporation, known throughout these proceedings as the "subscriber." February 8, 1935 trustees were appointed for the company under section 77B of the Bankruptcy Act (11 U.S.C.A. § 207). September 30, 1935 a plan of reorganization was confirmed. The proceedings incident to the reorganization are detailed in Re Celotex Co. (D. C.) 12 F.Supp. 1.

Twenty-five petitions for the allowance of compensation and expenses are presented. Considerations controlling the court in making allowances are stated in Re National Department Stores, Inc. (D.C.) 11 F.Supp. 633.

In disposing of the petitions, I shall not attempt to make a full recital of the services. The petitioners may be classified under eight heads: (1) Reorganization committee and its attorneys; (2) subscriber and its attorneys; (3) debenture holders' committee and its attorneys; (4) bondholders' committee and its attorneys; (5) stockholders' committee and its attorneys; (6) trustees and their attorneys; (7) debtor and its attorneys; (8) objectors and their attorneys.

**1.** Reorganization Committee and its Attorneys.

In April, 1934, this committee of five was organized from residents of New York, Chicago, Minneapolis, and Los Angeles. The chairman of the committee was William B. Nichols, head of an organization engaged, among other things, in corporate reorganization. The committee selected a permanent secretary and had offices in New York and Chicago. It proceeded with the assistance of attorneys to formulate a plan of reorganization. In June, 1934, the court in the receivership proceedings authorized the promulgation of this plan and the solicitation of deposits thereunder. The committee opened negotions with the bondholders' committee, the stockholders' committee, and the largest individual stockholder. Securities and Exchange Commission undertook to investigate the plan. After several hearings in Washington the investigation was discontinued, and the solicitation of deposits was resumed. The committee intervened in these proceedings and effected a modification of the plan to meet suggestions of the commission and of the other committees. It also negotiated with individual stockholders. The security holders were widely scattered throughout the United States. In order to reach them and explain the plan in detail the committee divided the country into three zones. It employed William B. Nichols & Co. to cover the Atlantic seaboard to the Alleghenys, H. P. Hayden of Chicago to cover the section west of the Alleghenys and east of the Rockies and Reed and Urban the Pacific Coast. Finally the plan was submitted for approval, and, after modification, was confirmed by the court.

■ The committee held a dozen meetings attended by all except Gilmore, the California member. The work of the committee was unequally distributed. The record shows that the bulk of the work was done by its chairman. He proved unusually effective. The committee petitions for an allowance of 8,500 shares of new common stock as provided in the plan. The responsibility for making allowances devolves upon the court. No provision in a plan of reorganization relieves the court from that duty. It was perfectly obvious that an allotment of shares of common stock in the new company would be speculative in character and might prove grossly excessive.

At no time did the court entertain a thought of making any allowance in common stock. Reasonable compensation to be allowed by the court for the services rendered by the several members of the committee is: William B. Nichols $20,000; John Irwin $6,000; I. H. Overman $6,000; George M. Seaman $6,000; and E. B. Gilmore $4,000.

■ All allowances for legal services to the committee must be made by the court, and where they are sought as expenses incurred by a committee, should be disallowed. Accordingly, sums aggregating $4,700 paid to Williams, Nelson & English, Stuart M. Salisbury and Satterlee & Canfield are disallowed. Expenses incurred in the preparation of petitions for allowances and attending hearings on such allowances cannot be approved.

The disbursements claimed by the committee appear large, but the security holders were widely scattered, and the period of reorganization was extended. Under the circumstances, they will be allowed in the sum of $126,688.93.

Upon receivership, Dahlberg, president of the company, tried single-handed to find new capital for reorganization. Early in 1933 he retained Ettelson, an attorney of Chicago, to examine the entire situation and plan a line of action. In the summer of 1933 Dahlberg and Ettelson arrived at what they thought a sound basis of reorganization. They went to New York and found Groves. In due course an agreement was made with the subscriber, the nominee of Groves, to furnish the new capital. In April, 1934, the reorganization committee also retained Ettelson and afterwards associated with him Martin of Satterlee & Canfield of New York City. For 2½ years Ettelson and for a year and a half Martin were actively engaged in negotiating with different committees and security holders and formulating an acceptable plan. Ettelson drafted the original plan, certificates of deposit, and other documents. Afterwards Martin collaborated in subsequent drafts and conferences. The attorneys attended the meetings of the reorganization committee. As one of the early reorganizations under section 77B, the proceedings were subjected to rigorous examination by the government. The attorneys removed objections to the plan of reorganization raised by the Securities Division of the Federal Trade Commission

and the Securities and Exchange Commission. They participated in all negotiations incident to the drafting and approval of the plan and attended the numerous hearings before the court. In March, 1935, Satterlee & Canfield were paid $3,500 by this committee. Ettelson has received nothing. Proper allowances to these attorneys and their expenses are: Samuel A. & Leonard B. Ettelson $50,000, and $931.79 expenses; Satterlee & Canfield $25,000; Hastings, Stockly & Duffy, local counsel for the committee, will be allowed $2,500.

## 2. The Subscriber and its Attorneys.

 Central Securities Corporation, the subscriber, has been compensated as provided in the plan. In April, 1934, the subscriber retained Cravath, deGersdorff, Swaine & Wood of New York City, represented here by Carl W. Painter. He assisted in the preparation of every major paper used in the proposal and consummation of the plan. He participated very effectively in the hearings before this court. He conducted a voluminous correspondence and attended numerous conferences with respect to the plan. For a year and a half he devoted 50 per cent. of his time to this work amounting to 1,400 working hours. In the plan of reorganization, it is provided that counsel for the subscriber be paid out of the estate. This, however, cannot bind the court. Throughout the reorganization proceedings Painter was recognized as the attorney of the subscriber and was primarily concerned in serving it. In this situation the court deems it fair that the allowance to Painter should be paid in equal portions by the subscriber and the estate. Throughout the proceedings Clarence A. Southerland of Ward & Gray was local counsel for the subscriber and by a parity of reasoning his compensation should be divided between the subscriber and the estate. The court allows Cravath, deGersdorff, Swaine & Wood $20,000 and $1,006.57 expenses; and Ward & Gray $1,000 and $26.15 expenses.

Robb, Clark & Bennitt have petitioned for an allowance of $17,500. At the hearing, their representative testified that his firm was "counsel for the subscriber in this matter." Services for the subscriber cannot form the basis of an allowance in these proceedings. Services in these proceedings for the subscriber have been fully covered. Accordingly, no allowance can be made to these petitioners.

## 3. Debenture Holders' Committee and its Attorneys.

In December, 1932, this committee was originally organized. Owing to differences of opinion, it was inactive for more than a year. When the plan of May 1, 1934, was formulated, the committee was revived and reorganized. As a result of its negotiations, the position of the debenture holders was substantially bettered. Among other improvements, debenture holders receive new debentures instead of prior preferred stock, as contemplated in the original plan. It also rendered service in procuring necessary acceptances of the plan. The committee retained as its counsel, Blake & Voorhees, represented by Develin. This representative drafted the papers affecting the interest of the debenture holders. He participated in the conferences and attended the hearings. A reasonable allowance to the committee is: Edward J. Costigan $3,000; Henry Verdelin $1,000; John F. Russell, Jr., $1,000. Expenses of the committee in the amount of $5,074.14 are allowed. Blake & Voorhees, counsel to this committee, are allowed $5,000 and $195.99 expenses.

## 4. Bondholders' Committee and its Attorneys.

The bondholders' committee, like the debenture holders' committee, was formed in 1932 and was equally inactive until May, 1934, when a plan was formulated by the reorganization committee. It negotiated and brought about a number of changes in the plan in the interest, not only of the bondholders, but of all the security holders. The original plan made no provision for the payment of back interest on bonds or for a sinking fund for the bonds. It contained no provision for participation by bondholders in the management of the new company. It contained no restrictions upon the possible dissipation of working capital. These defects were all remedied, and this committee substantially contributed thereto. Their contribution was unequal. That variation is reflected in the amounts allowed.

After the committee was organized, it engaged Fisher, Boyden, Bell, Boyd & Marshall, of Chicago and particularly Glenn A. Lloyd of that firm. He made a careful study of the plan of May, 1934, and worked with the committee in formulating desirable changes. He attended many conferences with members of the committee and with Nichols, Ettelson,

Martin, and Painter. His work involved a number of trips to St. Louis, Washington, and New York as well as to Wilmington. He participated in the work incident to the closing of both indentures. He also participated with others in the drafting of the major instruments for carrying out the plan. Allowances to this committee are: James W. Marshall $2,000; Mike S. Hart $1,500; F. E. Struthers $1,000; and J. Sanford Otis $1,000. Expenses of the committee in the amount of $10,292.52 are allowed. Counsel to this committee are allowed $5,000.

**5.** Stockholders' Committee and its Attorneys.

In November, 1934, the old stockholders' committee was dead and a new stockholders' committee called the "Cushing Committee" was organized at the instance of Nichols. Cushing was in a position to render services in furthering the plan. The other members of the committee represented substantial holdings of stock. Theretofore stockholders had opposed the plan. Cushing was helpful in dispelling opposition, in obtaining acceptances, and generally in furthering the plan. He was the active member of the committee and conducted its correspondence. The other members of the committee were representative citizens who favored the plan, but contributed no concrete service for which allowances can be made. Service of the attorneys consisted in becoming acquainted with the plan and correspondence and in conferring with Cushing. A representative of the law firm with Cushing appeared before the Securities and Exchange Commission in Washington. The attorneys gave helpful advice and drafted certain papers. Cushing is allowed $1,000, and Cotton, Franklin, Wright & Gordon, counsel to the committee, are allowed $500. Committee expenses in the sum of $915.84 are allowed.

6. Trustees and their Attorneys.

Legal objections are raised to the making of any allowance to Alden as trustee and to Lutkin and Van Hook, his attorneys. It is admitted that Alden and Lutkin were members of the law partnership of Alden, Latham & Young of Chicago and that Van Hook was an associate of that firm, and, further, that all fees allowed to Alden as trustee and to Lutkin and Van Hook as attorneys for that trustee will be paid to the partnership of Alden, Latham & Young and divided as other partnership fees are divided.

On or about June 16, 1932, Young, a member of this partnership, was appointed as one of the receivers of the Celotex Company in the equity proceedings in this court and as one of the ancillary receivers in Chicago and New Orleans. Alden and Lutkin, other members of this partnership, were employed as counsel by the receivers. February 1, 1935, Young died and Alden was appointed receiver as his successor on February 5, 1935. Thereafter Lutkin and Van Hook were employed as counsel for the receivers. February 8, 1935, Alden was appointed by this court one of the trustees in this 77B proceeding. February 14, 1935, an order was entered authorizing the employment by the trustees of Lutkin and Van Hook, together with Monroe & Lemann of New Orleans and Richards, Layton & Finger of Wilmington, as attorneys for the trustees.

Young, as receiver, has been paid for his services $69,500. Alden and Lutkin have been paid $60,000 as attorneys for the receivers. Alden is now asking for $20,000, compensation as trustee, and Lutkin and Van Hook seek an allowance of $30,000 as attorneys for the trustees. If all amounts now requested are allowed, this law firm will receive the aggregate sum of $179,500 for services from June 16, 1932, until the plan of reorganization became effective on October 30, 1935.

Under section 30 of the Bankruptcy Act (11 U.S.C.A. § 53), the Supreme Court promulgated General Order 42 (11 U.S.C.A. following section 53). Concerning petitions for allowances it provides: "And such petition shall be accompanied by an affidavit of the applicant stating that no agreement has been made, directly or indirectly, and that no understanding exists, for a division of fees between the *applicant* and the receiver, the trustee, the bankrupt, the debtor, or the *attorney of any of them. In the absence of such petition and affidavit no allowance of compensation shall be made."* (Italics supplied.) No sound reason has been advanced why this general order should apply to compensation of trustees and attorneys in bankruptcy proceedings and should not apply to allowances to like officers in proceedings under section 77B. Neither the application of Alden or of Lutkin and Van Hook complies with this General Order. The affidavit required could not have been truthfully filed. In fact, the affidavits filed with the petitions for allowances state that there is a partnership agreement for a division

of the fees. The purpose of the general order is apparent. An unwholesome situation may exist where there is a common pecuniary interest between the trustee of an estate and his attorney. It is clear that an attorney and client should deal at arm's length. The client seeks disinterested advice and resists the payment of excessive fees. The attorney, on the other hand, is inclined to ask liberal and sometimes unreasonable compensation. Frequently their attitudes are antagonistic. The positions of client and trustee are closely analogous. It is the duty of the trustee to preserve the estate and oppose an excessive allowance to his attorney. Where there is a common pecuniary interest between trustee and attorneys, the advantage of dealing at arm's length is lost. The purpose of the general order is to avoid such common interest and the possibility of the evils flowing therefrom. The reasons for the rule have been stated and need not be repeated. Weil v. Neary, 278 U.S. 160, 49 S.Ct. 144, 73 L.Ed. 243. In re Consolidated Factors Corporation (C.C.A.) 59 F.(2d) 193. The petitions of Alden, trustee, and of Lutkin and Van Hook, his attorneys, for allowances must be denied for failure to comply with General Order 42 and because such denial is expressly prescribed by that order. The application of this order may work hardship in certain instances. Here, however, the petitioners have been fairly compensated for services rendered in the receivership and trusteeship proceedings. Throughout the proceedings the management of the business of the debtor devolved upon Dahlberg, president of debtor and for many years its executive head. His duties were not assumed by the receivers or trustees.

Other petitioners under this heading are in no way affected by the general order. A review of the record indicates that the amounts requested by them are excessive. There will be allowed: Colin C. Bell $1,-000; Richards, Layton & Finger $2,500; and $30.53 expenses; Monroe & Lemann $2,500.

### 7. Debtor and its Attorneys.

The debtor asks allowance of certain expenses paid by Dahlberg incident to the reorganization proceedings and particularly reimbursement of certain directors for expenses incurred by them in attending four directors' meetings during the period the plan was under consideration. These items aggregate $1,567.81 and will be allowed.

Pam & Hurd, attorneys of Chicago, were retained by the debtor in January, 1935. They investigated the status of the receivership proceeding and the steps that had been taken by the various committees considering reorganization. They conferred with the officers of the company and members of the different committees. They attended meetings of the directors and prepared the answer of the debtor filed in this proceeding. They participated in various conferences both before and following confirmation of the plan and took part in the steps to put the plan into effect. At the time this law firm came into the picture the plan of reorganization was well advanced and in capable hands. The record discloses a needless duplication of services on their part. Three thousand five hundred dollars will be allowed to Pam and Hurd and $469.93 expenses. William G. Mahaffy was local attorney for the debtor and will be allowed $1,500 and $39.-50 expenses.

### 8. Objectors and their Attorneys.

The petitioners, Charles S. Hirsch and Ferris Booth, were deeply interested in the capital stock of the debtor. Hirsch was senior partner in the New York banking house of Hirsch, Lilienthal & Co. holding 190 shares of preferred, 812 shares of common and 42,274 voting trust certificates. The Dahlberg Trust held 2,524 shares of preferred and 39,836 shares of common stock of the debtor to secure loans of $500,000 to Dahlberg Corporation of America. In this trust $\frac{4}{10}$ interest was held by Charles S. Mott, $\frac{3}{10}$ interest by Charles S. Hirsch, and $\frac{3}{10}$ interest by the wife of Willis H. Booth, mother of the petitioner, Ferris Booth. Charles S. Mott and Charles S. Mott Foundation were the holders of 7,000 shares of preferred stock and 28,856 shares of common or voting trust certificates.

Shortly following the receivership, Hirsch and his attorney, Riegelman, Willis H. Booth, an attorney representing Mott, and other stockholders interested in the estate of the debtor, conferred in New York in their mutual interest. At a conference of security holders in Chicago in October, 1932, four committees were appointed. Hirsch was named chairman of a stockholders' committee of which Willis H. Booth later became a member. Hirsch also was a member of a so-called General Committee. Although these two latter committees functioned informally in ad-

vising with the receivers, they never asked for or received the deposit of securities. A fund of approximately $5,000 was raised by subscriptions from security holders and used primarily to prevent the delisting of the stock by the New York Stock Exchange. No other constructive work was performed by these committees and they ceased to function. It clearly appears that the petitioners Hirsch and Booth were acting solely in their own behalf. Riegelman, attorney for Hirsch, testified in these proceedings:

"XQ. In other words, that committee [General Committee] was merely a group of gentlemen who hired you to represent their interests, is that it, and did not represent anybody else, and never asked any one else for authority to represent them? A. That is correct.

"XQ. And the same thing is true of the Stockholders' Committee? A. That is correct. * * *

"XQ. These individuals whom you represented were acting for their own interests, is that right? A. That is as far as I understood.

"XQ. Throughout? A. That is correct."

After the plan of May 1, 1934, was formulated by the reorganization committee, five letters were sent to all security holders strongly protesting against the plan of reorganization then under consideration. The first dated July 20, 1934, was signed by Ferris Booth, Charles S. Hirsch, and C. S. Mott, and the others, dated October 25, November 23, December 26, 1934, and January 29, 1935, by Booth, Hirsch, and John G. Getz, Jr., representing Mott.

In November or December, 1934, a stockholders' committee, of which Cushing was chairman, was organized at the instance of Nichols and thereafter participated in the reorganization proceedings. The reorganization committee steadily pressed for acceptance of its plan. June 18, 1935, Mott accepted the plan with certain amendments yet Hirsch and Booth opposed it to the end. In so doing they were entirely within their rights, but their activities do not afford the basis of an allowance of compensation. Mott's attitude in failing to petition for compensation confirms the opinion that this group of stockholders was acting in its own behalf. As petitioners are not entitled to compensation for protecting their own interest, no

allowance can be made to cover their expenses.

The period of service of the several counsel for the objectors started from different dates: Riegelman, Hess & Hirsch from July, 1932; Chamberlain, Clark, Buchner & Willi from June, 1934; and Marvel, Morford, Ward & Logan from December 1, 1934. From the latter date these attorneys were associated together. Like their clients the efforts of these attorneys were not devoted to the formulation and promulgation of a fair and feasible plan of reorganization. Their efforts were devoted to the organization of an opposition group to retard or postpone the promulgation of the plan. They were animated by the hope that the business of the company would improve to a point where it could reorganize itself. This hope was unfounded and their efforts in furtherance thereof were futile and without any benefit to the estate. When it became apparent that reorganization was inevitable, these attorneys contributed some constructive service. They list under six heads their contribution to the reorganization. A careful consideration of the several claims, however, reveals that they are asking compensation for results for which they are not responsible. It is the duty of the court without suggestion of counsel to eliminate obviously unfair features of a plan. For example, the issuance of rights to the subscriber and of stock to the reorganization committee were features that never commended themselves to the court, and their elimination was in no way due to the opposition of these attorneys. The court indicated at an early stage of the hearings a purpose to eliminate the warrants. However, the court does recognize the assistance of these attorneys in several particulars. Participation in the hearings on the fairness of the terms and conditions of the issuance of certificates of deposit and briefing the questions raised were helpful to the court. The cross-examination of the reorganization committee on the question of allowances to that committee and briefing the same was a profitable service. The same may be said with respect to the argument and brief relating to General Order XLII and its application in this proceeding.

The contribution of these attorneys varied. With due consideration to the respective services of each, the court makes the following allowances: Marvel, Morford, Ward & Logan $5,000 and $1,268.45 expenses; Chamberlain, Clark, Buchner &

Willi $2,500 and $706.93 expenses; and Riegelman, Hess & Hirsch $2,500 and $857.09 expenses.

The compensation and expenses requested and the amounts allowed are set out in the following:

### SUMMARY.

| Petitioners | Requested Services | Requested Expenses | Allowed Services | Allowed Expenses |
|---|---|---|---|---|
| **(1) Reorganization committee and its attorneys** | | | | |
| Wm. B. Nichols, Chairman | 2,500 shs. | | $20,000. | |
| George M. Seaman | 1,500 " | | 6,000. | |
| I. H. Overman | 1,500 " | $135,182.00 | 6,000. | $126,688.93 |
| John Irwin | 1,500 " | | 6,000. | |
| E. B. Gilmore | 1,500 " | | 4,000. | |
| Samuel A. & Leonard B. Ettelson | $75,000. | $ 931.79 | $50,000. | $ 931.79 |
| Satterlee & Canfield | 65,000. | 0. | 25,000. | 0. |
| Hastings, Stockly & Duffy | 7,500. | 0. | 2,500. | 0. |
| **(2) Subscriber and its attorneys** | | | | |
| Central Securities Corporation (Paid as provided in plan) | 0. | 0. | 0. | 0. |
| Cravath, de Gersdorff, Swaine & Wood | 75,000. | 2,013.13 | 20,000. | 1,006.57 |
| Ward & Gray | 2,000. | 52.29 | 1,000. | 26.15 |
| Robb, Clark & Bennitt | 17,500. | 0. | 0. | 0. |
| **(3) Debenture holders committee and its attorneys** | | | | |
| Edward J. Costigan | | | 3,000. | |
| John F. Russell, Jr. | 22,500. | 5,074.14 | 1,000. | 5,074.14 |
| Henry Verdelin | | | 1,000. | |
| Blake & Voorhees | 17,500. | 195.99 | 5,000. | 195.99 |
| **(4) Bondholders committee and its attorneys** | | | | |
| James W. Marshall | | | 2,000. | |
| Mike S. Hart | 10,000. | 10,292.52 | 1,500. | 10,292.52 |
| F. E. Struthers | | | 1,000. | |
| J. Sanford Otis | | | 1,000. | |
| Fisher, Boyden, Bell, Boyd and Marshall | 12,500. | 0. | 5,000. | 0. |
| **(5) Stockholders committee and its attorneys** | | | | |
| Charles G. Cushing | 5.000. | | 1,000. | |
| George L. Eastman | 2,500. | | 0. | |
| Marcellus Murdock | 2,500. | 915.84 | 0. | 915.84 |
| G. Hall Roosevelt | 2,500. | | 0. | |
| J. G. Wray | 2,500. | | 0. | |
| Cotton, Franklin, Wright and Gordon | 2,000. | 0. | 500. | 0. |
| **(6) Trustees and their attorneys** | | | | |
| Wm. Tracy Alden | 20,000. | 0. | 0. | 0. |
| Colin C. Bell | 2,000. | 0. | 1,000. | 0. |
| H. C. Lutkin and Hubert Van Hook | 30,000. | 0. | 0. | 0. |
| Monroe & Lemann | 5,000. | 0. | 2,500. | 0. |
| Richards, Layton & Finger | 7,500. | 30.53 | 2,500. | 30.53 |
| **(7) Debtor and its attorneys** | | | | |
| Debtor | 0. | 1,567.81 | 0. | 1,567.81 |
| Pam & Hurd | 7,500. | 469.93 | 3,500. | 469.93 |
| Wm. G. Mahaffy | 2,500. | 39.50 | 1,500. | 39.50 |
| **(8) Objectors and their attorneys** | | | | |
| Charles S. Hirsch and Ferris Booth | 10,000. | 4,651.28 | 0. | 0. |
| Marvel, Morford, Ward & Logan | 25,000. | 1,268.45 | 5.000. | 1,268.45 |
| Riegelman, Hess & Hirsch | 20,000. | 857.09 | 2,500. | 657.09 |
| Chamberlain, Clark, Buchner & Willi | 20,000. | 706.93 | 2,500. | 706.93 |

An order in accordance with this opinion may be submitted.